STATE OF NEBRASKA, APPELLEE, V.
DECABOOTER WILLIAMS, APPELLANT.

697 N.W.2d 273

Filed May 27, 2005. No. S-04-747.

918

A. Michael Bianchi for appellant.

Jon Bruning, Attorney General, and James D. Smith for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Decabooter Williams appeals his convictions and sentences for two counts of felony murder. He contends that (1) he did not voluntarily waive his *Miranda* rights because he was sleep deprived and intoxicated, and therefore his confession should be suppressed; (2) he should have been allowed to use a transcript of a taped statement to refresh a witness' recollection; and (3) the court improperly instructed the jury. We affirm.

# BACKGROUND

## SUMMARY

This appeal arises from a house fire that killed Victoria Burgess and her daughter LaTisha Tolbert. According to testimony at trial, before the fire, Burgess had accused Williams of stealing money from her purse. Another man later confronted Williams and took money from Williams and gave it to Burgess, which resulted in an argument between Williams and Burgess. Angry, Williams left and went to a neighbor of Burgess and asked the neighbor to loan him a gun. The neighbor refused, and Williams then went to a convenience store where he filled a wine bottle with gasoline and obtained matches.

Williams returned to the neighbor's home and stated that he was going to burn Burgess' house down; he then went to Burgess' house. Diane Williams (Diane), a former girl friend of Williams, lived with Burgess, and stated that Williams woke her and warned her to leave because he was going to burn the house down. Williams then poured gasoline around the interior of the house and lit it. Diane escaped through a window, but Burgess and Tolbert perished in the fire.

## INTERROGATION AT POLICE STATION

Investigators learned that Williams was at the scene when the fire occurred and found him and Diane at Williams' home the morning after the fire. Williams consented to accompany the investigators to the station for questioning; he was left in an interview room for about 30 minutes before the interview started. During this time, he dozed off periodically. When the interview began, a police detective, Daniel R. Hayes, asked preliminary questions to determine whether Williams could understand questions and engage in conversation and whether he was under the influence of drugs or alcohol. In response to a question about drug and alcohol use, Williams responded that he had been drinking "[a] little earlier, yeah[, a] lot earlier" and that he had drunk "a buncha beer and gin." Hayes concluded that Williams was not under the influence and that he understood the questions and could engage in conversation.

Hayes read a *Miranda* rights advisory form to Williams and noted his responses on the form. A videotape in the record shows

that Williams stated "yes" to the following questions: Do you understand (1) that you have the right to remain silent, (2) that your statement could be used against you, (3) that you have the right to a lawyer and that the lawyer could be present during the questioning, and (4) that if you cannot afford a lawyer, the court will appoint one to represent you. Hayes did not read the final question on the form, "Knowing your rights in this matter, are you willing to talk to me now?" Instead, he asked Williams if he was going to talk about the fire, and Williams stated he did not know what happened. Hayes then asked whether Williams was going to answer questions, and Williams stated, "Yeah." Hayes wrote on the advisory form that Williams' answer to the last question was, "Go ahead, yes." This statement does not appear in the videotape of the interview.

Williams initially denied any involvement with the fire and stated that as he was coming down the alley near the house, he saw Diane run out of the house. Williams was periodically left alone in the interview room. During that time, police interviewed Diane. She initially denied involvement, but later changed her story. According to Diane, a disagreement arose between Williams and Burgess about some missing money and property, and Williams poured gasoline around the interior of the house and lit it. Hayes went back into the interview room and informed Williams that Diane told him what had happened; Williams then confessed to starting the fire. Williams moved to suppress the statements because he stated he was not properly advised of his *Miranda* rights and because the statements were involuntary. After a hearing, the motion was overruled.

### ATTEMPT TO REFRESH DIANE'S MEMORY

At trial, Diane testified about Williams' actions in setting the fire. She stated that she was sleeping when Williams came over to the house and knocked on the door to her room. She then opened the door, came out, and saw Williams start the fire. During cross-examination, Diane was asked if she recalled telling the police that when she opened the door, the fire was "already there." She answered, "No, I don't remember that." She was then asked whether it would refresh her recollection about what she told the police if she was shown a portion of the transcript from a taped

statement that she gave to the police. The State objected before Diane answered the question, and a side-bar conference was held. The State argued that Diane's recollection could not be refreshed or her statements impeached with unsworn statements in a document made by police. The court sustained the objection. Williams did not make an offer of proof. Neither the taped interview nor a transcript of the interview is in the record.

## JURY INSTRUCTIONS

The court instructed the jury on the elements of felony murder. In instruction No. 10, the jury was instructed that Williams was guilty of felony murder if he intended to commit arson and the victim died during the course of arson or attempted arson. In instruction No. 20, the court instructed the jury in part that "[i]ntent is a material element of the crime of arson charged against the defendant." Williams did not object to instruction No. 10, defining arson as an intentional crime, but did suggest alternate language. He, however, did not object to instruction No. 20. The jury found him guilty on both counts, and he was sentenced to two consecutive terms of life imprisonment without parole. Williams appeals.

## ASSIGNMENTS OF ERROR

Williams assigns, rephrased, that the court erred by (1) denying his motion to suppress because he did not waive his *Miranda* rights, (2) denying his motion to suppress involuntary statements, (3) precluding him from using a transcript to refresh a witness' recollection, and (4) instructing the jury that he had been charged with arson.

## STANDARD OF REVIEW

■ A district court's finding and determination that a defendant's statement was voluntarily made will not be set aside on appeal unless this determination is clearly erroneous. *State v. Thomas*, 267 Neb. 339, 673 N.W.2d 897 (2004).

■ Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. Concerning questions of counsel's performance or prejudice to

the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. *State v. Gales, ante* p. 443, 694 N.W.2d 124 (2005).

## ANALYSIS

### MIRANDA FORM NOT READ EXACTLY

Williams argues that he was not properly advised of his *Miranda* rights because the last line of the *Miranda* form was not read exactly and that his answer was not correctly recorded. Therefore, he contends that the warning was inadequate.

▇ To safeguard an uncounseled individual's Fifth Amendment privilege against self-incrimination, suspects interrogated while in police custody must be told that they have a right to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney, either retained or appointed, at the interrogation. *State v. Thomas, supra.* We have stated that there is nothing magic about the particular words used to ensure that a suspect knows his or her rights. *State v. Jordan*, 229 Neb. 563, 427 N.W.2d 796 (1988).

Here, Hayes did not read the final question on the form— "Knowing your rights in this matter, are you willing to talk to me now?" Instead, he asked Williams if he was going to talk about the fire and answer questions. Williams answered, "Yeah." Although the last line of the advisory form was not read, Hayes' last question fulfilled the *Miranda* requirements. Therefore, we determine that the warnings read to Williams were adequate, even though they were not read exactly as written on the *Miranda* advisory form.

### MOTION TO SUPPRESS BECAUSE MIRANDA WAIVER WAS INVOLUNTARY

Williams argues that the court erred in not suppressing his statements because he did not knowingly and voluntarily waive his *Miranda* rights. He argues that because he was tired, sleep deprived, and intoxicated, his statements were not voluntary.

▇ But neither exhaustion nor intoxication will necessarily invalidate a *Miranda* waiver. *U.S. v. Korn*, 138 F.3d 1239 (8th

Cir. 1998). Thus, we have held that intoxication is not conclusive on the issue of the voluntariness of a statement. *State v. Lamb*, 213 Neb. 498, 330 N.W.2d 462 (1983).

In determining whether a statement is voluntary, we apply a totality of the circumstances test. The determination reached by the trial court will not be disturbed on appeal unless clearly wrong. See, *State v. Thomas*, 267 Neb. 339, 673 N.W.2d 897 (2004); *State v. Lamb, supra.* Concerning intoxication, we have recognized that " '[t]he defendant must be so intoxicated that he is unable to understand the meaning of his statements. . . . If the trial judge is satisfied that under the totality of the circumstances the defendant was able to reason, comprehend, or resist, the statements are to be admitted.' " *State v. Lamb*, 213 Neb. at 504, 330 N.W.2d at 467, quoting *State v. Laffoon*, 125 Ariz. 484, 610 P.2d 1045 (1980).

Here, the trial court correctly admitted Williams' confession into evidence. Although the evidence showed that Williams was tired and had consumed alcohol, the record reflects that he was no longer intoxicated by the time of the interview and that he demonstrated his ability to understand and answer questions. In the videotaped interview, Williams appeared able to reason and comprehend the questions and he answered them coherently. Consequently, the trial court was not clearly wrong in determining that Williams knowingly and voluntarily waived his *Miranda* rights and voluntarily confessed.

### DENIAL OF USE OF POLICE TRANSCRIPT ON CROSS-EXAMINATION

Williams next contends that the trial court erred when it denied the use of a police transcript of Diane's statements for the purpose of impeachment or to refresh her recollection. Williams, however, did not make an offer of proof, and the transcript is not in the record.

Error may not be predicated upon a ruling of a trial court excluding testimony of a witness unless the substance of the evidence to be offered by the testimony was made known to the trial judge by offer or was apparent from the context within which the questions were asked. *State v. Cortis*, 237 Neb. 97, 465 N.W.2d 132 (1991).

Here, there was no showing of the evidence sought to be introduced through Diane's statement other than the comment she may have made to police stating that the fire was already started when she responded to Williams' knock on her door. Diane never answered the foundational question whether the transcript sought to be used would refresh her recollection. Nor did she answer foundational questions necessary to determine whether the transcript could be properly used for impeachment. We are unable to determine from the record any information about the transcript of the statement sought to be used, because no offer of proof was made and the transcript sought to be used was not included in the record. Without more, we cannot perform a meaningful review of this assignment of error. Accordingly, we determine that the issue was waived.

## JURY INSTRUCTIONS

 Williams contends that the court improperly instructed the jury because the instructions stated that he was "charged" with arson. Failure to timely object to jury instructions prohibits a party from contending on appeal that the instructions were erroneous. *State v. Mata*, 266 Neb. 668, 668 N.W.2d 448 (2003). Because Williams did not object, he has waived the issue.

## INEFFECTIVE ASSISTANCE OF COUNSEL

 Williams next argues, however, that his counsel was ineffective for failing to object to the instruction. To establish a right to relief because of a claim of ineffective counsel at trial or on direct appeal, the defendant has the burden first to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. *State v. Brown*, 268 Neb. 943, 689 N.W.2d 347 (2004). Jury instructions must be read as a whole, and if they fairly present the law so that the jury could not be misled, there is no prejudicial error. *State v. Anderson, ante* p. 365, 693 N.W.2d 267 (2005).

Here, Williams was not directly charged with arson. Instead, arson was the underlying felony for the charge of felony murder. The instruction at issue, however, was included to explain the

effect of intent on the underlying felony. When the instructions are read together, we find no prejudice. Williams was not denied effective assistance of counsel.

## CONCLUSION

We determine that the trial court did not err in allowing Williams' confession into evidence. He waived any argument about the use of a police transcript to refresh Diane's recollection or to impeach her testimony, and he was not denied effective assistance of counsel. Accordingly, we affirm.

AFFIRMED.