Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/20/2017 08:08 AM CST

State of Nebraska, appellee, v.
Decabooter Williams, appellant.
___ N.W.2d ___

Filed January 20, 2017.    No. S-16-083.

1. **Postconviction: Proof: Appeal and Error.** A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous.

2. **Postconviction: Constitutional Law: Appeal and Error.** In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.

3. **Postconviction: Appeal and Error.** Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law. When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusion.

4. **Postconviction: Constitutional Law.** Postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional violations.

5. **Postconviction: Constitutional Law: Proof.** In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable.

6. **Postconviction: Records.** Neb. Rev. Stat. § 29-3001(2) (Reissue 2016) requires that the court grant a prompt hearing unless the motion and the files and records of the case show to the satisfaction of the court that the prisoner is entitled to no relief.

7. **Postconviction: Constitutional Law: Proof: Records.** Under the Nebraska Postconviction Act, Neb. Rev. Stat. §§ 29-3001 to 29-3004 (Reissue 2016), an evidentiary hearing on a motion for postconviction

relief must be granted when the motion contains factual allegations which, if proved, constitute an infringement of the movant's rights under the Nebraska or federal Constitution. However, if the motion alleges only conclusions of fact or law, or the records and files in the case affirmatively show that the movant is entitled to no relief, no evidentiary hearing is required.

8. **Postconviction: Effectiveness of Counsel: Appeal and Error.** A motion for postconviction relief asserting ineffective assistance of trial counsel is procedurally barred when (1) the defendant was represented by a different attorney on direct appeal than at trial, (2) an ineffective assistance of trial counsel claim was not brought on direct appeal, and (3) the alleged deficiencies in trial counsel's performance were known to the defendant or apparent from the record.

9. **Postconviction: Appeal and Error.** On postconviction relief, a defendant cannot secure review of issues which were or could have been litigated on direct appeal. A defendant is entitled to bring a second proceeding for postconviction relief only if the grounds relied upon did not exist at the time the first motion was filed.

10. **Postconviction: Effectiveness of Counsel: Appeal and Error.** Where a defendant is represented both at trial and on appeal by the same lawyers, the defendant's first opportunity to assert the ineffective assistance of trial counsel is in a postconviction motion.

11. **Effectiveness of Counsel: Proof.** Under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), a defendant has the burden to show that (1) counsel performed deficiently—that is, counsel did not perform at least as well as a lawyer with ordinary training and skill in criminal law—and (2) this deficient performance actually prejudiced the defendant in making his or her defense.

12. ____: ____. The prejudice prong of the ineffective assistance of counsel test requires that the defendant show a reasonable probability that but for counsel's deficient performance, the result of the proceeding in question would have been different.

13. **Effectiveness of Counsel: Words and Phrases.** A reasonable probability is a probability sufficient to undermine confidence in the outcome.

14. **Effectiveness of Counsel: Appeal and Error.** An appellate court may address the two prongs of the ineffective assistance of counsel test, deficient performance and prejudice, in either order.

15. **Trial: Effectiveness of Counsel: Appeal and Error.** In determining whether trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably.

16. **Trial: Attorneys at Law.** Trial counsel is afforded due deference to formulate trial strategy and tactics.

17. **Effectiveness of Counsel: Presumptions: Appeal and Error.** The entire ineffectiveness analysis is viewed with a strong presumption that counsel's actions were reasonable and that even if found unreasonable, the error justifies setting aside the judgment only if there was prejudice.

18. **Trial: Attorneys at Law: Effectiveness of Counsel: Appeal and Error.** When reviewing a claim of ineffective assistance of counsel, an appellate court will not second-guess reasonable strategic decisions by counsel.

19. **Right to Counsel.** When a defendant becomes dissatisfied with court-appointed counsel, unless he or she can show good cause to the court for the removal of counsel, his or her only alternative is to proceed pro se if he or she is competent to do so.

20. ____. An indigent defendant's right to counsel does not give the defendant the right to choose his or her own counsel.

21. **Trial: Prosecuting Attorneys: Appeal and Error.** When considering a claim of prosecutorial misconduct, an appellate court first considers whether the prosecutor's acts constitute misconduct. If it concludes that the prosecutor's acts were misconduct, it next considers whether the misconduct prejudiced the defendant's right to a fair trial.

22. ____: ____: ____. In determining whether a prosecutor's improper conduct prejudiced the defendant's right to a fair trial, an appellate court considers the following factors: (1) the degree to which the prosecutor's conduct or remarks tended to mislead or unduly influence the jury; (2) whether the conduct or remarks were extensive or isolated; (3) whether defense counsel invited the remarks; (4) whether the court provided a curative instruction; and (5) the strength of the evidence supporting the conviction.

23. **Trial: Prosecuting Attorneys: Juries.** Prosecutors are not to inflame the prejudices or excite the passions of the jury against the accused.

24. **Insanity: Proof.** The two requirements for the insanity defense are that (1) the defendant had a mental disease or defect at the time of the crime and (2) the defendant did not know or understand the nature and consequences of his or her actions or that he or she did not know the difference between right and wrong.

25. **Insanity: Intoxication.** Insanity immediately produced by intoxication does not destroy responsibility when the defendant, when sane and responsible, made himself or herself voluntarily intoxicated.

26. **Criminal Law: Intoxication: Intent.** Voluntary intoxication is no justification or excuse for crime unless the intoxication is so excessive that the person is wholly deprived of reason so as to prevent the requisite criminal intent.

27. **Criminal Law: Intoxication: Mental Competency.** As a matter of law, voluntary intoxication is not a complete defense to a crime, even when it produces psychosis or delirium.

28. **Insanity: Intoxication.** A defendant may not assert an insanity defense when the insanity was temporary and brought on solely by voluntary intoxication through the use of drugs.

29. **Homicide: Intent.** It is not the provocation alone that reduces the grade of the crime, but, rather, the sudden happening or occurrence of the provocation so as to render the mind incapable of reflection and obscure the reason so that the elements necessary to constitute murder are absent.

30. **Effectiveness of Counsel.** As a matter of law, counsel cannot be ineffective for failing to raise a meritless argument.

31. **Trial: Photographs.** The admission of photographs of a gruesome nature rests largely with the discretion of the trial court, which must determine their relevancy and weigh their probative value against their prejudicial effect.

32. **Trial: Photographs: Homicide: Intent.** In a homicide prosecution, a court may admit into evidence photographs of a victim for identification, to show the condition of the body or the nature and extent of wounds and injuries to it, and to establish malice or intent.

33. **Postconviction: Constitutional Law: Effectiveness of Counsel.** There is no constitutional guarantee of effective assistance of counsel in a postconviction proceeding.

Appeal from the District Court for Douglas County: J Russell Derr, Judge. Reversed and remanded with directions.

Robert W. Kortus, of Nebraska Commission on Public Advocacy, for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Heavican, C.J.
## I. INTRODUCTION
Decabooter Williams was convicted of two counts of first degree murder. His convictions and sentences were affirmed on

direct appeal.[1] A subsequent postconviction motion was denied, and the appeal from that denial was dismissed for the failure to file a brief. Williams then filed a second motion for post-conviction relief, which was granted in part and in part denied. Williams appeals. We reverse, and remand with directions.

## II. BACKGROUND

Williams was convicted of two counts of first degree murder in connection with the deaths of Victoria Burgess and LaTisha Tolbert in a 2003 house fire. Eyewitness testimony and surveillance video presented at Williams' trial, in addition to Williams' taped confession, established the following overwhelming evidence that Williams committed the crimes for which he was charged.

According to the evidence, Burgess and Williams had an argument at Burgess' house. Following the argument, Williams went to a convenience store where he filled a wine bottle with gasoline and obtained matches. Williams woke Diane Williams (Diane), his former girlfriend who lived with Burgess, and warned her to leave because he was going to burn the house down. Williams then poured gasoline around the interior of the house and lit it. Diane escaped through a window, but Burgess and Tolbert perished in the fire. A more detailed summary of the facts can be found in our opinion on direct appeal.

### 1. Trial

Following a jury trial, Williams was convicted of two counts of murder in the first degree. He was sentenced to life without parole on both counts. Williams was represented at trial by counsel from the Douglas County public defender's office.

### 2. Direct Appeal

Williams appealed his convictions.[2] He was represented on appeal by different counsel than at trial. His direct appeal

---

[1] *State v. Williams*, 269 Neb. 917, 697 N.W.2d 273 (2005).

[2] *Id.*

counsel was appointed by the court. On appeal, Williams contended that (1) he did not voluntarily waive his *Miranda* rights, because he was sleep deprived and intoxicated and therefore his confession should be suppressed; (2) he should have been allowed to use a transcript of a taped statement to refresh a witness' recollection; and (3) the court improperly instructed the jury that Williams had been charged with arson.[3]

On May 27, 2005, this court affirmed Williams' convictions, holding that the trial court did not err in allowing Williams' confession into evidence, because "[h]e waived any argument about the use of a police transcript to refresh Diane's recollection or to impeach her testimony, and he was not denied effective assistance of counsel."[4]

### 3. FIRST MOTION FOR POSTCONVICTION RELIEF

On August 5, 2009, Williams, by and through court-appointed direct appeal counsel, filed his first petition for postconviction relief. Williams argued that he was denied due process of law, the right to effective assistance of counsel, and the right to properly cross-examine and confront all witnesses against him because of trial counsel's failure to (1) take the deposition of Diane, (2) make an offer of proof and preserve the record as to Diane's prior inconsistent statements in her recorded police interview, (3) object to improper jury instructions that Williams was charged with arson and make a record of the same, (4) assert a "drug psychosis/insanity" defense, and (5) object to the playing of the taped confession. The State filed a motion to dismiss.

On December 8, 2010, the district court filed an order sustaining the State's motion to dismiss Williams' petition for postconviction relief without an evidentiary hearing. The district court rejected the claims, holding that (1) trial counsel's failure to depose Diane would have been apparent to Williams at the

---

[3] *Id.*

[4] *Id.* at 925, 697 N.W.2d at 280.

time of appeal or apparent from the record, because Diane's deposition was not in the record; (2) trial counsel's failure to make an offer of proof or otherwise preserve the record would not have resulted in not guilty verdicts, because there was significant other evidence that would support the jury's verdicts; (3) trial counsel's failure to object to improper jury instructions that Williams was "'charged' with arson" and make record of the same was not prejudicial error, because the jury instructions, when taken together, were not prejudicial; (4) trial counsel's failure to assert a drug psychosis/insanity defense was an issue that would have been apparent to Williams at the time of appeal or apparent from the record, because Williams' drug and alcohol abuse was raised in his motion to suppress a statement; and (5) trial counsel's failure to object to the playing of a taped confession would have been apparent to Williams at the time of appeal or apparent from the record.

### 4. APPEAL OF FIRST POSTCONVICTION

Williams appealed from the denial of his first postconviction motion. The district court again appointed direct appeal counsel to represent Williams in his postconviction appeal. On April 25, 2011, in case No. S-11-035, this court dismissed the appeal, because Williams' counsel failed to file a brief. Williams sought discharge of counsel due to counsel's failure to file a brief, and direct appeal counsel filed a motion to withdraw.

### 5. SECOND MOTION FOR POSTCONVICTION RELIEF

Williams filed a second motion for postconviction relief. The district court granted counsel's motion to withdraw as counsel for Williams, and the court appointed the Nebraska Commission on Public Advocacy to represent Williams in his motion for postconviction relief.

In his second motion, Williams argued that he was denied the right to effective assistance of both trial counsel and direct appeal counsel. Williams filed a second amended motion for

postconviction relief that incorporated the arguments from Williams' first motion for postconviction relief and his second motion prior to amendment.

Williams argued that his direct appeal and first postconviction counsel was operating under a conflict of interest when he represented Williams on postconviction after representing him on direct appeal, because he could not raise his own ineffectiveness. Therefore, if granted a new direct appeal, Williams would argue, in addition to the arguments in his first motion for postconviction relief, there was an unconstitutional breakdown in the attorney-client relationship at the trial, direct appeal, and postconviction levels.

Additionally, Williams argued that counsel, when representing Williams as direct appeal counsel, erred in failing to assign as error trial counsel's failure to (1) take Diane's deposition; (2) make an offer of proof or otherwise preserve the record regarding Diane's inconsistent statements; (3) object to the playing of a redacted version of Williams' postarrest statement; (4) investigate a college student witness who had conducted a survey at the jail where Williams was incarcerated; (5) withdraw following Williams' oral motion for new counsel at his sentencing hearing; (6) object to the testimony of Officer Barry DeJong as to an admission that implied the existence of Williams' propensity for criminal activity; (7) timely object and move for a mistrial due to improper statements during the closing arguments presented by the State; (8) assert a drug psychosis/insanity or drug impairment defense; (9) present a defense that the fire was started accidentally or due to provocation; (10) comply with Williams' request to view discovery; and (11) communicate with Williams.

Williams also argued the following claims solely against direct appeal counsel: (1) an unconstitutional breakdown in the attorney-client relationship at the direct appeal level and (2) a failure to present and preserve for review the claim that two gruesome photographs were received over trial counsel's objections. Williams further contended that appellate counsel

failed to (1) withdraw from the case prior to the initial post-conviction proceeding and (2) file Williams' brief in the appeal of the initial postconviction proceeding.

The State filed a motion to dismiss, arguing that Williams' claims were procedurally barred. In addition, the State argued that any remaining issues that were not procedurally barred should be overruled, as the motion alleged only conclusions of fact or law, or the records and files affirmatively show that Williams was not entitled to relief.

On January 20, 2016, the district court partially granted Williams' amended successive postconviction motion without an evidentiary hearing. The district court's order stated in pertinent part:

In his Second Amended Motion for Post-conviction Relief [Williams] raises other issues which almost entirely relate to the issues that [he] was not able to raise in the first post-conviction relief proceedings due to the aforementioned failure to timely file a brief.

. . . [F]ailure to raise the issue of whether trial counsel was ineffective in [Williams'] appeal and post-conviction proceedings for failing to make an offer of proof as to the contents of the police transcript which was objected to by the State at trial and the Court sustained the objection . . . would not likely have made any difference even if it was in the record as an offer of proof because there was significant other evidence that would support the jury's verdict including [Williams'] own confession to starting the fire . . . .

While the Court generally agrees with the State's argument that [Williams] does not have a constitutional right to effective post-conviction counsel (see State v. Becerra, 263 Neb. 753[, 642 N.W.2d 143] (2002)[)], where [Williams] was denied the opportunity to present issues in his appeal of the Court's Order on post-conviction due to alleged ineffective assistance of counsel, [he] was denied an important opportunity which should be restored.

While Neb. Rev. Stat. Sec. 29-3001 (3) provides that the Court "need not" entertain a second motion or successive motions for post-conviction relief, it does not bar the Court from such consideration.

On [Williams'] Second Motion for Post-conviction Relief the Court orders that [Williams] is allowed to appeal the Court's Order of December 10, 2010 overruling [his] Motion for Post-conviction Relief to the Nebraska Supreme Court.

The district court relied largely on Neb. Rev. Stat. § 29-3001 (Reissue 2016) in its opinion. That statute states in pertinent part:

(2) Unless the motion and the files and records of the case show to the satisfaction of the court that the prisoner is entitled to no relief, the court shall cause notice thereof to be served on the county attorney, grant a prompt hearing thereon, and determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that there was such a denial or infringement of the rights of the prisoner as to render the judgment void or voidable under the Constitution of this state or the Constitution of the United States, the court shall vacate and set aside the judgment and shall discharge the prisoner or resentence the prisoner or grant a new trial as may appear appropriate. . . .

(3) A court may entertain and determine such motion without requiring the production of the prisoner, whether or not a hearing is held. Testimony of the prisoner or other witnesses may be offered by deposition. The court need not entertain a second motion or successive motions for similar relief on behalf of the same prisoner.

The district court held that Williams was "allowed to appeal the Court's Order of December 10, 2010 overruling [his] Motion for Post-conviction Relief to the Nebraska Supreme Court." Williams appealed from the district court's order.

## III. ASSIGNMENTS OF ERROR

Williams assigns, restated and consolidated, that the district court erred in (1) granting postconviction relief without an evidentiary hearing, (2) granting limited postconviction relief of a reinstated appeal of the denial of postconviction relief under the first postconviction motion, and (3) denying the remainder of Williams' allegations of ineffective assistance of trial and appellate counsel.

## IV. STANDARD OF REVIEW

[1-3] A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous.[5] In appeals from postconviction proceedings, we review de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.[6] Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law. When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusion.[7]

## V. ANALYSIS

Williams makes various arguments on appeal, but the crux of his argument is that the district court should have never permitted direct appeal counsel to also represent Williams in Williams' first postconviction motion. Williams additionally contends that the relief granted by the district court—a reinstated appeal from the denial of Williams' first postconviction motion—was erroneous.

---

[5] *State v. Reeves*, 258 Neb. 511, 604 N.W.2d 151 (2000).

[6] *State v. Payne*, 289 Neb. 467, 855 N.W.2d 783 (2014).

[7] *Id.*

### 1. District Court's Authority

#### (a) Lack of Evidentiary Hearing

We turn first to Williams' assertion that the district court erroneously granted limited postconviction relief without an evidentiary hearing. The district court ruled—without holding an evidentiary hearing—that Williams was "allowed to appeal the Court's Order of December 10, 2010 overruling [his] Motion for Post-conviction Relief to the Nebraska Supreme Court."

Williams contends that because § 29-3001(2) of the Nebraska Postconviction Act[8] gives the district court the option to either determine that the defendant is entitled to no relief based on a review of the record or grant a hearing on the motion, the district court erred in granting a new appeal from Williams' first postconviction motion without holding an evidentiary hearing. Williams also cites to *State v. Jim.*[9]

This court held in *Jim* that a court commits reversible error if postconviction relief is granted without an evidentiary hearing and the making of findings of fact and conclusions of law. In addition, Williams notes, this court is clear in *Jim* that the relief should be a "new" direct appeal, and not a "reinstated" direct appeal.[10]

The State agrees that the district court had no authority to grant such relief without an evidentiary hearing. However, the State argues that the district court had no authority to grant such relief, with or without an evidentiary hearing, because it was successive relief so the court's failure to comply with necessary procedure is immaterial.

[4-7] Postconviction relief is a very narrow category of relief, available only to remedy prejudicial constitutional violations.[11] In a motion for postconviction relief, the defendant

---

[8] See Neb. Rev. Stat. §§ 29-3001 to 29-3004 (Reissue 2016).

[9] *State v. Jim*, 275 Neb. 481, 747 N.W.2d 410 (2008).

[10] Brief for appellant at 16.

[11] *State v. Bazer*, 276 Neb. 7, 17, 751 N.W.2d 619, 627 (2008).

must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable.[12] Section 29-3001(2) requires that the court grant a prompt hearing "[u]nless the motion and the files and records of the case show to the satisfaction of the court that the prisoner is entitled to no relief . . . ." Under the act, an evidentiary hearing on a motion for postconviction relief must be granted when the motion contains factual allegations which, if proved, constitute an infringement of the movant's rights under the Nebraska or federal Constitution. However, if the motion alleges only conclusions of fact or law, or the records and files in the case affirmatively show that the movant is entitled to no relief, no evidentiary hearing is required.[13]

The record indicates that the district court did not grant Williams an evidentiary hearing prior to awarding Williams the limited relief of an appeal from the denial of the first postconviction motion. But, as we make clear in *Jim*, and as the plain language of § 29-3001 states, in order to award relief, a prompt hearing must first be held "'[u]nless the motion and the files and records of the case show to the satisfaction of the court that the prisoner is entitled to no relief . . . .'" The failure to hold such a hearing before ordering reinstatement was error.

### (b) Whether Williams' Claims Were Procedurally Barred

We turn next to the question of whether the district court had the authority to grant any postconviction relief at all. The State contends that it did not, as all of Williams' claims were procedurally barred.

[8,9] As noted above, if the motion alleges only conclusions of fact or law, or the records and files in the case affirmatively show that the movant is entitled to no relief, no evidentiary

---

[12] *State v. Jim, supra* note 9.

[13] *Id.*

hearing is required.[14] A motion for postconviction relief asserting ineffective assistance of trial counsel is procedurally barred when (1) the defendant was represented by a different attorney on direct appeal than at trial, (2) an ineffective assistance of trial counsel claim was not brought on direct appeal, and (3) the alleged deficiencies in trial counsel's performance were known to the defendant or apparent from the record.[15] On postconviction relief, a defendant cannot secure review of issues which were or could have been litigated on direct appeal.[16] A defendant is entitled to bring a second proceeding for postconviction relief only if the grounds relied upon did not exist at the time the first motion was filed.[17]

### (i) Trial Counsel

We first address Williams' claims of ineffective assistance of trial counsel. Williams was represented by different counsel on direct appeal than at trial. Williams brought one ineffective assistance of trial counsel argument in his direct appeal. All of Williams' allegations of ineffective assistance of trial counsel could have been raised on direct appeal because he had different appellate counsel than trial counsel. The claims of ineffective assistance of trial counsel are procedurally barred.

### (ii) Direct Appeal Counsel

We turn next to Williams' claims of ineffective assistance of his direct appeal counsel. Williams argues that he could not raise the ineffective assistance of appellate counsel claims because of the continued representation of direct appeal counsel in his first postconviction relief proceedings. The State argues that although Williams had the same counsel for direct appeal and for his first postconviction proceeding, this was

---

[14] *Id.* at 487, 747 N.W.2d at 415.

[15] *State v. Jackson*, 275 Neb. 434, 747 N.W.2d 418 (2008).

[16] See *State v. Bazer, supra* note 11.

[17] *State v. Hessler*, 288 Neb. 670, 850 N.W.2d 777 (2014).

not his first opportunity to raise claims against direct appeal counsel, because he could have raised those claims pro se in the prior postconviction.

[10] In *State v. Payne*,[18] this court held that the defendant's claims of ineffective assistance of trial counsel were not procedurally barred, despite his failure to raise them on direct appeal, because trial counsel was still engaged as counsel during the critical appeal period. This court reasoned that "[i]f trial counsel was still engaged as counsel, trial counsel could not be expected to raise or address his or her own ineffectiveness, and the failure to file such an appeal would not result in those claims being procedurally barred in a later postconviction action."[19] If the court required counsel to raise his or her own ineffectiveness, it "would create the potential for a conflict of interest."[20] This court ultimately held that "where a defendant is represented both at trial and on appeal by the same lawyers, the defendant's first opportunity to assert the ineffective assistance of trial counsel is in a postconviction motion."[21]

In *State v. Bazer*,[22] this court held that the defendant's claims of ineffective assistance of trial counsel were not procedurally barred in his motion for postconviction relief, despite the defendant's failure to file a direct appeal or to allege that his counsel was ineffective for failing to file a direct appeal. The court reasoned:

> When a defendant was represented both at trial and on direct appeal by the same lawyers, the defendant's first opportunity to assert ineffective assistance of trial counsel is in a motion for postconviction relief. The same is

---

[18] *State v. Payne, supra* note 6.

[19] *Id.* at 472, 855 N.W.2d at 787.

[20] *Id*. at 471, 855 N.W.2d at 786.

[21] *Id*. at 472, 855 N.W.2d at 787.

[22] *State v. Bazer, supra* note 11.

true where trial counsel elects not to file a direct appeal at all.[23]

Williams was represented by the same counsel on both direct appeal and in his first postconviction motion. Counsel then failed to file an appeal to Williams' first postconviction motion. Different counsel was appointed to Williams for his second postconviction motion. As in *Payne*, Williams' first postconviction counsel "could not be expected to raise or address his or her own ineffectiveness."[24] This is true even though, ordinarily, the failure to raise the ineffective assistance of direct appeal counsel in a postconviction proceeding would make those claims procedurally barred.

The State argues that Williams had a pro se duty to raise his ineffective assistance of counsel claims against appellate counsel. We reject that assertion in the context of appointed counsel in this case. The State has provided no support for its claim, and we find it to be without merit. Williams has a Sixth Amendment right to the effective assistance of counsel on direct appeal.[25] And Williams' first meaningful opportunity to raise the issue of ineffective assistance of appellate counsel was in his second postconviction motion, after he was appointed different counsel that could allege the ineffectiveness of appellate counsel.

We therefore hold that under these facts, Williams may raise his ineffective assistance of appellate counsel claims in his second postconviction motion in this case. Because Williams was appointed the same counsel by the court on both direct appeal and on his motion for postconviction relief, the second motion was Williams' first opportunity to raise a claim of violation of his constitutional right to effective assistance of appellate counsel. Williams' claims of ineffective assistance concerning counsel's representation on direct appeal, including

---

[23] *Id.* at 18, 751 N.W.2d at 627.

[24] See *State v. Payne, supra* note 6, 289 Neb. at 472, 855 N.W.2d at 787.

[25] See U.S. Const. amend. VI.

his "layered claims" of failure to raise ineffectiveness of trial counsel, are not procedurally barred.[26]

This ruling does not expand the Nebraska Postconviction Act. Williams did not have a meaningful opportunity to challenge his assistance of appellate counsel prior to his second motion for postconviction relief, as he was represented by the same appointed counsel on direct appeal in his first motion for postconviction, and on the appeal of his first postconviction relief. We discourage courts from appointing the same counsel for direct appeal and postconviction relief in order to avoid situations in which a defendant's ineffective assistance of counsel claims are preserved until the second postconviction relief motion.

## 2. ANALYSIS OF CLAIMS UNDER STRICKLAND

[11-14] Because we have determined that Williams' claims of ineffective assistance of direct appeal counsel are not procedurally barred, we analyze the claims under the two-prong test set forth in *Strickland v. Washington.*[27] Under *Strickland*, a defendant has the burden to show that (1) counsel performed deficiently—that is, counsel did not perform at least as well as a lawyer with ordinary training and skill in criminal law—and (2) this deficient performance actually prejudiced the defendant in making his or her defense.[28] The prejudice prong of the ineffective assistance of counsel test requires that the defendant show a reasonable probability that but for counsel's deficient performance, the result of the proceeding in question would have been different.[29] A reasonable probability is a probability sufficient to undermine confidence in the outcome.[30]

---

[26] Brief for appellant at 29.

[27] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[28] See *State v. Jackson, supra* note 15.

[29] *Id.*

[30] *Id.*

An appellate court may address the two prongs of this test, deficient performance and prejudice, in either order.[31]

[15-18] In determining whether trial counsel's performance was deficient, there is a strong presumption that counsel acted reasonably.[32] Trial counsel is afforded due deference to formulate trial strategy and tactics.[33] The entire ineffectiveness analysis is viewed with a strong presumption that counsel's actions were reasonable and that even if found unreasonable, the error justifies setting aside the judgment only if there was prejudice.[34] When reviewing a claim of ineffective assistance of counsel, an appellate court will not second-guess reasonable strategic decisions by counsel.[35]

### (a) Claims of Ineffective Assistance of Direct Appeal Counsel Failing to Allege Ineffectiveness of Trial Counsel

#### (i) Failure to Take Diane's Deposition

Williams argues that appellate counsel failed to assign as error the failure of trial counsel to make an offer of proof concerning the disparity between Diane's statements to the police and her trial testimony as to when the fire started.

Diane's statements to the police were inconsistent with her trial testimony that Williams woke her and warned her to leave prior to burning down the house. Diane was never deposed, and her statements in the police report were ruled inadmissible at trial.

We find that Williams was not prejudiced by any alleged deficient conduct. Other evidence introduced at trial, in addition to Diane's testimony, included (1) a neighbor's testimony

---

[31] *State v. Edwards*, 284 Neb. 382, 821 N.W.2d 680 (2012).

[32] *State v. Al-Zubaidy*, 263 Neb. 595, 641 N.W.2d 362 (2002).

[33] *Id.*

[34] *State v. Parnell*, 294 Neb. 551, 883 N.W.2d 652 (2016).

[35] *State v. Jim, supra* note 9.

that following an argument with Burgess, one of the victims, Williams went to the neighbor's house and asked for a gun, which request the neighbor refused; (2) a convenience store employee's testimony that Williams went to a convenience store, where he filled a bottle with gasoline and obtained matches; (3) surveillance footage of Williams at the convenience store filling a bottle with gasoline; and (4) the neighbor's testimony that Williams returned to the neighbor's home and stated that he was going to burn Burgess' house down.[36] In addition, Williams confessed to starting the fire.

In light of the evidence outside of Diane's testimony, there is not a reasonable probability that any discrepancy in Diane's testimony would have affected the jury's finding that Williams started the fire intentionally. Any deficient conduct was not prejudicial, and as such, counsel's performance was not ineffective.

### (ii) Failure to Make Offer of Proof or Otherwise Preserve Record

Williams argues that direct appeal counsel failed to assign as error the failure of trial counsel to make an offer of proof of the police transcript of Diane's statements for the purpose of impeachment or to refresh her memory.

On direct appeal, this court held that the issue was waived as to whether the "trial court erred when it denied the use of a police transcript of Diane's statements for the purpose of impeachment or to refresh her recollection," because Williams failed to make an offer of proof and the transcript was not in the record.[37] In its order denying Williams' first postconviction motion, the district court held that the disparity of Diane's in-court testimony and statement in the police report would not have made any difference in the jury verdicts, because there was "significant other evidence that would support the jury's

---

[36] *State v. Williams, supra* note 1.

[37] *Id.* at 923, 697 N.W.2d at 279.

verdict[s], including [Williams'] own confession to starting the fire."

We agree that based on the evidence admitted at trial, aside from Diane's testimony, even if trial counsel performed deficiently by failing to make an offer of proof of Diane's testimony, Williams was not prejudiced by that failure. Appellate counsel's performance was not ineffective.

### (iii) Failure to Object to Playing of Taped Confession

Williams argues that trial counsel failed to object to the playing of a redacted version of a videotape of Williams' interrogation. Williams contends that the officer had already testified as to Williams' statements recorded on the tape, so the admission of the tape was cumulative evidence. Additionally, Williams contended in his motion for postconviction relief that the redaction did not accurately portray the interview, because it eliminated the "'down time'" between questions and failed to show the "drowsy and weary state of mind that . . . Williams exhibited during the interview."

Even assuming that Williams' trial counsel performed deficiently when he failed to object to the admission of Williams' taped police interview after the officer had already testified to the interview, we do not find that trial counsel was ineffective. Williams does not contend that his statements on the video differed from the officer's testimony of Williams' statements. He only contends that it was unduly cumulative. This court has held that "[g]enerally, erroneous admission of evidence is harmless error and does not require reversal if the evidence is cumulative and other relevant evidence, properly admitted, supports the finding by the trier of fact."[38] Williams was not prejudiced by any failure on the part of his appellate counsel to object to the taped confession.

---

[38] *State v. Jenkins*, 294 Neb. 475, 487, 883 N.W.2d 351, 361 (2016).

### (iv) Failure to Investigate
### Witness From Jail

Williams contends that trial counsel failed to investigate a college student who was conducting a survey at the jail prior to Williams' police interview. Williams argues in his motion for postconviction relief that he told the student that he could not take part in the survey because his mind was "'messed up.'" Williams contends that this interaction could substantiate a defense of his inability to make a knowing, intelligent, and voluntary waiver of his rights before giving a statement to law enforcement. Williams claims that he told trial counsel about this interaction and that trial counsel failed to investigate it further.

The police officer conducting the interview following Williams' alleged conversation with the college student testified that Williams stated that he had consumed "'a bunch of beer and gin'" and that he fell asleep "on a couple of occasions" during the interview. The officer further testified that despite this, during the interview, it did not appear Williams was under the influence of alcohol or drugs and he appeared to understand the questions and respond appropriately. Additional testimony from the college student that Williams claimed he was "messed up" would not have affected the jury's decision. The conversation would likely have been inadmissible, and even if it were admissible, it would not have proved that Williams was unable to waive his *Miranda* rights. We fail to see how Williams could have been prejudiced by any failure of trial counsel to investigate this alleged conversation with a college student.

### (v) Counsel's Continued Representation of
### Williams Following Oral Motion for
### New Counsel at Sentencing Hearing

Williams made an oral motion for new counsel during the sentencing hearing, because (1) counsel and Williams had numerous conflicts, (2) counsel did not provide discovery when Williams requested it, (3) counsel did not call an expert

witness to testify as to Williams' substance abuse, (4) counsel
failed to inform Williams that the probation officer would con-
duct an interview, and (5) counsel may have failed to review
the presentence investigation report with Williams prior to
sentencing. No ruling on this motion is apparent on the record,
and the sentencing proceeded with continued representation
from trial counsel.

[19] When a defendant becomes dissatisfied with court-
appointed counsel, unless he or she can show good cause to the
court for the removal of counsel, his or her only alternative is
to proceed pro se if he or she is competent to do so.[39]

[20] Williams has a right to counsel, but he does not have
a right to counsel of his own choosing.[40] Williams' allegations
merely indicate dissatisfaction with his appointed counsel. We
conclude that counsel's failure to withdraw did not prejudice
Williams' defense.

Williams also contends that the district court erred in fail-
ing to appoint new counsel following his oral motion. For the
reasons stated above, we find no prejudice.

### (vi) Testimony of Officer DeJong

Williams argues that trial counsel failed to object to the
admission of testimony from Officer DeJong. He testified that
when he asked Williams to go downtown to the police station
for an interview, Williams stated that he did not have a problem
with it, but that the last time he went with the police, he ended
up going to jail. Williams argues in his motion for postconvic-
tion relief that admission of the evidence of prior crimes was
unduly prejudicial and that "[w]ithout the taint of this evidence,
the results of the proceedings would have been different."

Even assuming counsel was deficient in not objecting, we
find that Williams suffered no prejudice. Because of the over-
whelming evidence to support Williams' convictions, including

---

[39] *State v. McPhail*, 228 Neb. 117, 421 N.W.2d 443 (1988).

[40] *State v. Wabashaw*, 274 Neb. 394, 740 N.W.2d 583 (2007).

Williams' confession to starting the fire, surveillance video of him filling a bottle with gasoline, and eyewitness testimony, we conclude that Williams was not prejudiced by any alleged failure of trial counsel to object. Williams has not alleged facts which, if true, would entitle him to postconviction relief.

#### (vii) Failure to Timely Object and Move for Mistrial Due to Improper Statements During Closing Arguments Presented by State

Williams argues that trial counsel failed to object to improper statements made by the State during closing arguments. During those arguments, the prosecutor stated that opposing counsel was "blowing smoke," and called Williams a "punk," a "thief," and a "murderer."

[21-23] When considering a claim of prosecutorial misconduct, we first consider whether the prosecutor's acts constitute misconduct.[41] If we conclude that the prosecutor's acts were misconduct, we next consider "whether the misconduct prejudiced the defendant's right to a fair trial."[42] In determining whether a prosecutor's improper conduct prejudiced the defendant's right to a fair trial, we consider the following factors: (1) the degree to which the prosecutor's conduct or remarks tended to mislead or unduly influence the jury; (2) whether the conduct or remarks were extensive or isolated; (3) whether defense counsel invited the remarks; (4) whether the court provided a curative instruction; and (5) the strength of the evidence supporting the convictions.[43] This court has held that "[p]rosecutors are not to inflame the prejudices or excite the passions of the jury against the accused."[44]

---

[41] *State v. Dubray*, 289 Neb. 208, 854 N.W.2d 584 (2014).

[42] *Id.* at 223, 854 N.W.2d at 602.

[43] *Id.*

[44] *State v. Barfield*, 272 Neb. 502, 512, 723 N.W.2d 303, 312 (2006), *disapproved on other grounds, State v. McCulloch*, 274 Neb. 636, 742 N.W.2d 727 (2007).

In his rebuttal closing arguments, the prosecutor stated that Williams "is a punk." The prosecutor further stated, "I thought we had had enough smoke in this courtroom and in this case. But defense counsel gets up and we have more." The prosecutor then referenced a quote from another prosecutor that "[i]f you don't have the courage to point to the defendant and call him what he is — he's a thief and he's a murderer — you can't ask the jury to find him guilty." The prosecutor then closed his argument telling the jury, "[G]o back and do your duty. The cries of Victoria Burgess, you answer them. You answer them, ladies and gentlemen of the jury."

While these statements appeal to the jury's passions and prejudices, we cannot conclude that these statements were of such a nature as to mislead the jury. Moreover, considered in light of the evidence at trial, the statement that Williams was a "punk" was likely in reference to Diane's testimony that Williams told her after the fire that he "wasn't going to be treated like a punk." First, the remarks were isolated in nature in the context of the prosecutor's rebuttal argument. The prosecutor's entire rebuttal argument consisted of just 172 lines of the record. In addition, there is significant evidence supporting the convictions: testimony from Diane, the neighbor, and the convenience store employee, and the surveillance video of Williams filling a bottle with gasoline.

Any taint that resulted from the allegedly improper statements made by the prosecutor were outweighed by the significant weight of evidence that supported Williams' convictions. Therefore, any improper conduct did not prejudice Williams' right to a fair trial. Finding no prejudice, we cannot conclude that counsel was ineffective for failing to object to the statements.

### (viii) Failure to Assert Drug Psychosis/Insanity or Drug Impairment Defense

Williams argues that direct appeal counsel should have raised trial counsel's failure to present evidence or a psychiatrist

to show that Williams did not have the requisite intent to commit the crime of arson due to his prolonged substance abuse and his drug use prior to the fire and the subsequent police interview.

[24-28] Under our current common-law definition, the two requirements for the insanity defense are that (1) the defendant had a mental disease or defect at the time of the crime and (2) the defendant did not know or understand the nature and consequences of his or her actions or that he or she did not know the difference between right and wrong.[45] Insanity immediately produced by intoxication does not destroy responsibility when the defendant, when sane and responsible, made himself or herself voluntarily intoxicated.[46] Voluntary intoxication is no justification or excuse for crime unless the intoxication is so excessive that the person is wholly deprived of reason so as to prevent the requisite criminal intent.[47] As a matter of law, voluntary intoxication is not a complete defense to a crime, even when it produces psychosis or delirium.[48] A defendant may not assert an insanity defense when the insanity was temporary and brought on solely by voluntary intoxication through the use of drugs.[49]

As we understand Williams' arguments, Williams contends that he suffered from a mental defect at the time of the crime due his prolonged drug use. Williams has not submitted any further details of the effect of this alleged mental defect. Nor does the evidence indicate that Williams did not know or understand the nature and consequences of his actions or that he did not know the difference between right and wrong.

---

[45] *State v. Hotz*, 281 Neb. 260, 795 N.W.2d 645 (2011).

[46] *Id.*, citing *Schlenker v. The State*, 9 Neb. 241, 1 N.W. 857 (1879), *reversed* 9 Neb. 300, 2 N.W. 710.

[47] See *State v. Hotz, supra* note 45.

[48] *Id.*

[49] *Id.*

Rather, the evidence proves the contrary. According to Diane's testimony, Williams woke her and warned her to leave the house prior to setting the house on fire. According to the neighbor's testimony, Williams asked him for a gun, and when he refused to provide the gun, Williams made a statement to the neighbor that he intended to burn the house down. Williams then borrowed the neighbor's telephone, called Williams' mother, and told her that "'[t]he next time you hear from me, you'll be hearing from me from the penitentiary.'" Furthermore, Diane testified that after Williams poured gasoline around the house and on one of the victims, he lit a match that didn't catch fire, and proceeded to light two more matches which he threw on the gasoline in the house. This is strong evidence of Williams' intent to commit arson, that he understood the nature of his actions, and that he knew the difference between right and wrong.[50]

Williams contends that the evidence contained in the police interview that he had consumed beer and gin in excess prior to the time of the interview supports his argument regarding intent. It is unclear from the record whether Williams was intoxicated at the time of the interview or at the time he set the fire. However, Williams alleges that he voluntarily became intoxicated, which resulted in drug impairment and a drug-induced psychosis. Since this court has found that a defendant may not assert an insanity defense when the insanity was temporary and brought on solely by voluntary intoxication, Williams' claim is not an actionable claim.

Therefore, Williams' trial counsel was not deficient in failing to introduce evidence or call a psychiatrist to produce evidence of Williams' mental state as a result of drug and alcohol use the day of the fire as well as his prolonged substance abuse. We conclude that Williams was not prejudiced by any failure of trial counsel to pursue his suggested insanity defense.

---

[50] See *State v. Williams, supra* note 1.

### (ix) Failure to Present Defense That
### Fire Was Started Accidentally
### or Due to Provocation

Williams also alleges that trial counsel was ineffective for failing to present a defense that the fire was not started intentionally but was an accident or set as a result of provocation.

[29] This court has held that "[i]t is not the provocation alone that reduces the grade of the crime, but, rather, the sudden happening or occurrence of the provocation so as to render the mind incapable of reflection and obscure the reason so that the elements necessary to constitute murder are absent."[51]

According to testimony and surveillance video, following an argument with Burgess at Burgess' house, Williams went to a neighbor's house and asked for a gun, and when the neighbor refused, Williams proceeded to the convenience store, where he filled a bottle with gasoline. Williams then returned to Burgess' house and used the gasoline to set fire to her house. We find that Williams' argument that he started the fire due to provocation is without merit. This string of events does not constitute a "sudden happening" of which Williams was "incapable of reflection."

[30] Williams further argues that trial counsel failed to present a defense that the fire was started accidentally. Significant evidence of Williams' intent to commit arson was presented at trial. In addition to the evidence listed above, according to Diane's testimony, Williams poured gasoline around Burgess' house, lit a match, and threw the match at Burgess' feet, setting the house on fire; lit another match that went out; and lit a third match to set the kitchen on fire. Because of the overwhelming evidence that Williams intentionally set the fire, we conclude that Williams has not alleged facts which, if true, might entitle him to postconviction relief. As a matter of law, counsel cannot be ineffective for failing to raise a meritless argument.[52]

---

[51] *State v. Smith*, 284 Neb. 636, 642, 822 N.W.2d 401, 408 (2012).

[52] *State v. Erpelding*, 292 Neb. 351, 874 N.W.2d 265 (2015).

Therefore, Williams was not prejudiced by any failure by counsel to raise the defense that he started the fire accidentally.

### (x) Failure to Comply With Williams' Requests to View Discovery and Failure to Communicate With Williams

Williams next argues that he made numerous requests to trial counsel to see discovery in the case and that he was only permitted to see his statement to law enforcement. Williams also contends that trial counsel insufficiently communicated to him during the trial and that thus, he was not informed of the case against him or make a knowing waiver of the right to testify.

Defense counsel bears the primary responsibility for advising a defendant of his or her right to testify or not to testify.[53] Williams states that during trial, counsel ignored Williams' notes and conversation. Williams also claims that if he had received adequate advice from counsel, he would have testified that "either the deaths were not caused intentionally because of the impairment [of] drugs or a drug-induced psychosis; by accident; or that the deaths were caused during the provocation of a sudden quarrel necessitating lesser included offense instructions for second degree murder and manslaughter."

This court takes very seriously a defendant's right to testify. However, as we discussed above, there was strong evidence to rebut the claims Williams would have asserted in his testimony. The evidence presented at trial clearly showed that Williams was not under a drug-induced psychosis from prolonged drug use, because he understood the nature and consequences of his actions and understood the difference between right and wrong. Furthermore, Williams' psychosis and intoxication defense based on drug and alcohol use the day of the fire would not have been actionable, because it was temporary

---

[53] *State v. White*, 246 Neb. 346, 518 N.W.2d 923 (1994).

and brought on solely by voluntary intoxication. Finally, there is strong evidence of Williams' actions from the time of the argument until he set the house on fire which shows that he was not incapable of reflection and that the crimes did not happen suddenly. Based on the overwhelming evidence supporting Williams' convictions, we find that Williams' testimony would not have affected the verdicts. Therefore, Williams was not prejudiced by any alleged failure by trial counsel to communicate.

### (b) Claims of Ineffective Assistance That Center Solely on Direct Appeal Counsel

Williams also asserts ineffective assistance of counsel claims that center solely on appellate counsel's alleged failures, not on any failure to raise trial counsel's ineffectiveness. Williams argues that he received ineffective assistance of counsel in his direct appeal for the following reasons.

### (i) Unconstitutional Breakdown in Attorney-Client Relationship at Direct Appeal Level

Williams argues in his motion for postconviction relief that there was an unconstitutional breakdown in the attorney-client relationship with his direct appeal counsel, because counsel "failed to communicate with [Williams] in order to effectively select challenges to the validity of [his] conviction[s] and sentence[s]." Williams does not provide any support beyond this statement for his claim of counsel's failure to communicate. Williams does not allege any facts that show that he may be entitled to relief. As such, Williams is not entitled to relief.

### (ii) Failure to Present and Preserve Claim That Two Photographs Were Received Over Trial Counsel's Objections

Williams argues that his direct appeal attorney failed to assign as error on appeal Williams' claim that two gruesome photographs of the bodies of Burgess and a dog were not

relevant and were unduly prejudicial. The photographs were admitted over the objection of trial counsel.

[31,32] The admission of photographs of a gruesome nature rests largely with the discretion of the trial court, which must determine their relevancy and weigh their probative value against their prejudicial effect.[54] In a homicide prosecution, a court may admit into evidence photographs of a victim for identification, to show the condition of the body or the nature and extent of wounds and injuries to it, and to establish malice or intent.[55]

At trial, the State argued that the photographs show corroboration of witnesses, where the bodies were located, and the burning of the body. The district court found that the prejudice did not substantially outweigh the probative value.

We agree with the State that the admission of these photographs was not prejudicial. The photograph of Burgess' body showed the condition of the body or the nature and extent of the wounds, and the court did not abuse its discretion in admitting the photograph. And while the photograph of the burned dog's body might have lacked probative value, we cannot conclude that such was prejudicial, given the other evidence offered against Williams. We conclude that counsel was not ineffective for failing to assign the admission of the photographs on direct appeal.

### (c) Postconviction Counsel

Finally, we turn to Williams' claims of ineffective assistance of postconviction counsel. Williams contends that his first postconviction counsel failed to (1) withdraw from the case and request new counsel to be appointed and (2) file Williams' brief and proceed with the appeal of the postconviction proceeding.

[33] Section 29-3001 requires evidentiary hearings only if the motion contains factual allegations which, if proved,

---

[54] See *State v. Dubray, supra* note 41.

[55] See *id.*

constitute an infringement of the movant's rights under the Nebraska or federal Constitution. This court stated in *State v. Hessler*[56] that "[t]here is no constitutional guarantee of effective assistance of counsel in a postconviction action . . . ." As such, Williams' claims of ineffective assistance in the first postconviction and the appeal of the first postconviction are without merit.

### 3. Limited Postconviction Relief

Williams argues that the district court erroneously granted the limited postconviction relief of a reinstated appeal of the denial of postconviction relief under the first postconviction motion rather than a new direct appeal. Williams further argues that the district court order ruled on issues contained only in the first motion for postconviction relief and that thus, the court did not rule on the second motion for postconviction relief. The State contends that the district court had no authority to reinstate Williams' right to appeal from the denial of his first postconviction motion, because the district court only has authority to reinstate a civil appeal in postconviction cases when an appeal has been lost solely due to a mistake by the clerk or the court, not when the mistake is attributable to the parties or his or her agent. The State argues that all of Williams' claims were implicitly denied in the district court order.

Under § 29-3001(2), "[u]nless the motion and the files and records of the case show to the satisfaction of the court that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon . . . ."

We have established above that none of the files or records of the case show that Williams is entitled to relief on any of his claims of ineffective assistance of counsel. Therefore, Williams is not entitled to a hearing on his claims. As such, Williams' argument that the lower court may not grant a reinstated appeal is irrelevant in the current proceedings.

---

[56] *State v. Hessler, supra* note 17, 288 Neb. at 679, 850 N.W.2d at 785-86.

Finally, we read the trial court's decision as disposing of all of Williams' claims. Williams' second assignment of error is without merit.

## VI. CONCLUSION

We conclude that the district court erred in granting postconviction relief without conducting an evidentiary hearing, because failing to hold such a hearing before ordering reinstatement is improper under the requirements set forth in § 29-3001(2). However, based on our reading of Williams' second motion for postconviction relief and our review of the record, Williams is not entitled to an evidentiary hearing, either because he failed to allege sufficient facts to demonstrate a violation of his constitutional rights or because the record and the files affirmatively show that he is entitled to no relief.

Therefore, under § 29-3001(2), Williams is not entitled to a hearing on his claims. The decision of the district court is reversed, and the cause is remanded with directions to overrule Williams' second motion for postconviction relief.

REVERSED AND REMANDED WITH DIRECTIONS.